UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ANTLE MARKETING, INC., and
CASTELLINI COMPANY, LLC**                                      **PLAINTIFFS**

v.                                                              CIVIL ACTION NO. 3:18-CV-246-CRS

**A.J. PASSAFIUME SONS, INC.,** *et al.*                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

**I.      Introduction**

Courts are often, in the exercise of their jurisdiction, called upon to determine *what something is*. In a contract case familiar to many lawyers and law students, Judge Friendly opened his opinion with the sentence: "The issue is, what is chicken?" *Frigaliment Importing Co., Ltd. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117 (S.D.N.Y. 1960). Similar cases abound.[1] In another famous case—closer to the subject matter of this litigation—the Supreme Court was called on to determine whether a tomato was a fruit or a vegetable. *Nix v. Hedden*, 149 U.S. 304, 306 (1893) (botanically a fruit, but a vegetable "in the common language of the people").

Here, the Court is called upon to determine what Defendant A.J. Passafiume Sons, Inc. ("Passafiume") is. Plaintiffs Antle Marketing, Inc. and Castellini Company, LLC have asserted that Passafiume is a "commission merchant" or "dealer" of fresh produce such that it falls under the Perishable Agricultural Commodities Act (PACA). DN 12. The Defendants' motion to

---

[1] *See e.g. McBoyle v. United States*, 283 U.S. 25, 27 (1931) (whether an airplane is a "motor vehicle"); *United States v. 103 Electronic Gambling Devices*, 223 F.3d 1091, 1093 (9th Cir. 2000) ("This case poses the question, what is bingo?"); *White City Shopping Center, LP v. PR Restaurants, LLC*, 2006196313, 2006 WL 3292641, *3 (Mass. Super. Ct. Oct. 31, 2006) (deciding whether tacos, burritos, and quesadillas fall within the meaning of "sandwiches"). Even then-Judge Sonia Sotomayor joined in. *Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 770 (S.D.N.Y. 1997) ("This case poses the question 'What is insect repellent?'").

dismiss disagrees, thus challenging this Court's jurisdiction to hear the case. DN 14. *See* FED. R. CIV. P. 12(b)(1). In the alternative, Defendants urge us to find that the Plaintiffs' amended complaint does not state a claim upon which relief can be granted. *Id*. *See also* FED. R. CIV. P. 12(b)(6). To those allegations, Plaintiffs have responded in opposition. DN 15. Defendants have, in turn, replied. DN 16. As a result, this matter is now ripe (pun intended) for review. Finding it plausible that Passafiume is a "dealer" within the meaning of PACA and that the Individual Defendants could be liable under the amended complaint, the Court will deny the motion to dismiss.

## II. Factual Background

Antle, Castellini, and Passafiume all sell fresh produce. DN 12 at 2–3. Antle and Castellini do so in wholesale quantities and nationwide. *Id*. As part of that business, all three companies held valid produce licenses from the United States Department of Agriculture's PACA Branch. *Id.* Anthony Passafiume Jr., Sebastian Passafiume, Pamela Passafiume, Rhonda Passafiume-Moss, and Teresa Passafiume (the "Individual Defendants") (collectively, with A.J. Passafiume Sons, "Defendants") are the owners, officers, directors, and shareholders of Passafiume. *Id*. at 3. Plaintiffs claim they were responsible for the day-to-day operations of Passafiume's business and assets and, as such, can be found liable individually. *Id.*

This controversy arises from Antle and Castellini's sale of fresh produce to Passafiume on credit. Passafiume bought from Antle from October 2, 2017 to January 19, 2018 and Castellini from January 16, 2018 to March 18, 2018. *Id*. at 4. On each invoice sent to Passafiume, Antle and Castellini placed the statutorily prescribed language to preserve their rights as beneficiaries of the statutory trust. *Id*. at 5. *See* 7 U.S.C. § 499e(c)(4) ("a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to

preserve the trust"). In total, Antle and Castellini sold and delivered $69,196.83 worth of fresh fruits and vegetables to Passafiume. *Id*. Of that, they claim $43,828.06 is unpaid and due. *Id*. Antle and Castellini now claim that Passafiume has begun to dissipate the trust *res* without paying the creditors. *Id*. at 6. To recover that unpaid amount, Antle and Castellini brought this suit for (I) failure to maintain the PACA trust, (II) dissipation of trust assets, (III) failure to account and pay, (IV) breach of fiduciary duty, (V) breach of contract, and (VI) for interest and attorney's fees.

## III. Discussion

The Perishable Agricultural Commodities Act, codified at 7 U.S.C. §§ 499a, *et seq*., is designed to protect unpaid sellers of perishable agricultural commodities (e.g. fruits and vegetables). *Overton Distribs., Inc. v. Heritage Bank*, 340 F. 3d 361, 364 (6th Cir. 2003). To that end, the act creates a statutory floating trust in favor of the creditors. *Id.* "The trust protects the sellers against financing arrangements made by merchants, dealers, or brokers who encumber or give lenders a security interest in the commodities or the receivables or proceeds from the sale of the commodities, thus giving the claims of these sellers precedence over those of secured creditors." *Id.* at 365. *See also* 7 U.S.C. § 499e(c)(1) (Congressional finding that such arrangements constituted a burden on interstate commerce and was contrary to the public interest). The trust *res* includes all produce and produce-related assets, regardless of their source. *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010, 1012 (6th Cir. 1993).

Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) requires the Court to (A) determine the appropriate standard to apply to examining the jurisdictional predicate that Passafiume is a "dealer" under PACA, (B) apply that standard, and then (C) determine whether

3

Antle and Castellini have stated a plausible claim on which relief may be granted against the Individual Defendants. The Court addresses each issue in turn.

### A. Standard for Examining Jurisdictional Predicate

A 12(b)(1) challenge to jurisdiction may be either facial or factual. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial challenge "questions merely the sufficiency of the pleading." *Id*. There, the court takes all factual allegations in the complaint as true to determine whether those allegations establish federal claims. *Id*. This is similar to the inquiry under Rule 12(b)(6). In contrast, a factual challenge looks to whether, as a matter of fact, jurisdiction is present. *Id*. In such a scenario, there is no presumption that the allegations in the complaint are true. *Id.* Instead, the Court may undertake a "summary-judgment-like procedure" where the Court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing" to determine that subject matter jurisdiction exists. *Id*. If, however, "an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (citation omitted) (emphasis in original). This rule "provides a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim." *Id*.

Here, Defendants make a factual challenge to this Court's jurisdiction. DN 14 at 4. Ordinarily, this would require the Court to undertake a more in-depth factual inquiry. However, Passafiume's status as a "commission merchant, dealer, or broker" is an element of the cause of action. 5 WEST'S FED. ADMIN. PRAC. § 5658 (2018) (citing *Golden West Veg, Inc. v. Bartley*, 16-CV-3718, 2017 WL 386254 (N.D. Cal. Jan. 27, 2017) and *S&S Packing Inc. v. Spring Lake Ratite Ranch, Inc.*, 702 F. App'x 874 (11th Cir. 2017)). As a result, since the attack on

jurisdiction is truly a challenge to the validity of the claim, the Court must analyze the 12(b)(1) motion under the more deferential standard of Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dept. of Child Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In undertaking this inquiry, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

### B. Subject Matter Jurisdiction Based on PACA

PACA vests jurisdiction in the district courts over "actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499e(c)(5). Such trusts are created when "[p]erishable agricultural commodities" are "received by a commission merchant, dealer, or broker" and are not paid for. 7 U.S.C. § 499e(c)(2). Antle and Castellini do not contend that Passafiume is a broker. Therefore, the Court discusses only whether they have adequately pled that Passafiume is a commission merchant or dealer.

5

To qualify as a "commission merchant," the person or company must be "engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5). Plaintiffs, in a conclusory manner, allege that Passafiume was a commission merchant. DN 12 at 3. None of the attached exhibits demonstrate that Passafiume was in the business of selling on behalf of another entity based on a commission. Further, Plaintiffs do not address this point in their response to the motion to dismiss. Therefore, the Court finds that the Plaintiffs have not plausibly pled that Passafiume was a commission merchant.

To qualify as a "dealer," the person or company must be "engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agriculture], any perishable agricultural commodity in interstate or foreign commerce," subject to several exceptions. 7 U.S.C. § 499a(b)(6). The Secretary has defined "wholesale or jobbing quantities" as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x).[2]

As an initial matter, Plaintiffs argue that Passafiume's PACA license creates a presumption that Passafiume is a dealer. DN 15 at 6. The Court finds no law to support such a presumption. Instead, a more accurate reading of the statute appears to indicate that mere possession of a PACA license does not *per se* or presumptively indicate that the license holder is a "dealer" subject to PACA's regulations, but that such licensure can be considered as evidence

---

[2] It seems clear to the Court that this is an unambiguous and controlling application of PACA. *See e.g. In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 426 (8th Cir. 2001). *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). None of the parties contest this interpretation.

in determining whether the company is a dealer. *See e.g. Bandwagon Brokerage, Inc. v. Mafolie Foods Co., Inc.*, 168 F. Supp. 2d 506, 509 (D.V.I. 2001). *See also* 7 U.S.C. § 199d(a) (indicating that a license is required to do business as a dealer).

Defendants argue that this "wholesale or jobbing quantity" analysis is customer-specific. DN 14 at 8. Therefore, they reason, they may be a dealer with respect to some entities, but not to others. However, the plain language of this regulation indicates that the amount considered is to include all sales and purchases involving produce by the company in any day. This is not limited to transactions with a single buyer or seller. *Indianapolis Fruit Co. v. Locavore Food Distribs., Inc.*, 10-14070 2011 WL 4373976 at *3 (E.D. Mich. Sep. 20, 2011) ("Locavore ignores its prior purchases of 2,000 pounds or more from Produce growers other than Plaintiff on any given day"). Plaintiffs put it succinctly and correctly: "Once a person deals in wholesale and jobbing quantities for a single day, no matter how many suppliers or buyers are involved, they are considered a 'Dealer' under PACA and are subject to licensing and the statutory trust." DN 15 at 8. This interpretation ensures that the policy goal behind PACA of protecting sellers is realized.

To demonstrate that Passafiume has dealt with 2,000 pounds of produce in a single day, Plaintiffs have attached bills of lading to their amended complaint. Defendants argue these are "without authentication or other evidence of veracity" and, regardless, are insufficient to support the Plaintiffs' claims. DN 14 at 8. However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The bills of lading demonstrate that Passafiume received from Antle: 17,500 pounds of onions on October 2, 2017 (DN 12-5 at 3), 12,600 pounds of onions and potatoes on October 15, 2017 (*Id.* at 5), 12,000 pounds of onions on October 15, 2017 (*Id.* at 6), 15,000 pounds of onions on October 31, 2017 (*Id.* at 8), 18,900 pounds of potatoes on October 30, 2017 (*Id.* at 10), 15,000 pounds of onions on November 15, 2017 (*Id.* at 12), 10,000 pounds of onions on November 30, 2017 (*Id.* at 14), 21,000 pounds of potatoes on December 4, 2017 (*Id.* at 16), 16,180 pounds of onions on January 5, 2018 (*Id.* at 19), and 22,600 pounds of potatoes on January 19, 2018 (*Id.* at 21). That grand total of 160,780 pounds spread over 9 days plausibly indicates that Passafiume is dealing in "wholesale or jobbing quantities" greater than 2,000 pounds in any day.[3]

Therefore, Antle and Castellini have sufficiently pled that Passafiume is a "dealer" under PACA. As a result, this Court has jurisdiction over the PACA claim. The Court may exercise supplemental jurisdiction over the state-law claims which arise from a common nucleus of operative fact. 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

### C. The Individual Defendants

Individual Defendants urge that the claims against them, standing alone, do not state a claim on which relief can be granted. Specifically, they argue the amended complaint contains "naught but threadbare recitals and conclusory statements" which "fail to assert any actual act taken by any one of the Individual Defendants that was detrimental to Plaintiffs." DN 14 at 9–10.

"Individual liability in the PACA context is not derived from the statutory language, but from common law breach of trust principles." *Six L's Packing Co., Inc. v. Beale*, 524 F. App'x

---

[3] Castellini does not include the weight of its deliveries on its bills of lading—only its prices. Given the Court's ruling that the quantities are not customer-specific, it is irrelevant to the ultimate holding. However, it is worth noting that at least some of the Castellini bills of lading include quantities of items comparable to those shipped by Antle. *See e.g.* DN 12-6 at 8.

148, 156 (6th Cir. 2013) (quoting *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005)). Under those principles, the Sixth Circuit has concluded that "individual shareholders, officers, or directors of a corporation who are in a position to control statutory trust assets, and who fail to preserve those assets, may be held personally liable under the Act." *Id.* (quoting *Arava USA, Inc. v. Karni Family Farm, LLC*, 474 F. App'x 452 (6th Cir. 2012)). This is a unanimous position among the circuits.[4]

The Sixth Circuit has created a two-part test for determining individual liability under PACA. First, the individual must hold a position in the company akin to a "shareholder, officer, or director" which would permit control over trust assets. *Id.* Second, the individual must have been actually able to control the PACA trust assets. *Arava*, 474 F. App'x at 453 ("This liability arises not because the officer is a trustee or because of a piercing of the corporate veil, but rather because the officer himself has committed a tort against the trust's beneficiary."). *See also Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 172 (3d Cir. 2010) (laying out such a two-part test after analyzing precedent from the circuits).

On this issue, Plaintiffs have also provided exhibits attached to their amended complaint. Those show that the Agricultural Marketing Service lists all the Individual Defendants as the reported principals of Passafiume and that the Blue Book Services business report on Passafiume lists the Individual Defendants as owners of the business. DNs 12-3, 12-4. Specifically, it reveals that Anthony Passafiume is Treasurer and owner of 33.30% of the company, Sebastian Passafiume is President and owner of 33.30% of the company, Pamela Passafiume is Secretary

---

[4] *See, e.g., Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir.1999); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705–06 (2d Cir. 2007); *Weis-Buy*, 411 F.3d at 421; *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 667–68 (7th Cir. 2002); *Golman-Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *Sunkist Growers v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997); *Red's Mkt. v. Cape Canaveral Cruise Line, Inc.*, 181 F.Supp.2d 1339, 1343–44 (M.D. Fla. 2002), aff'd, 48 F. App'x 328 (11th Cir. 2002) (table).

9

and owner of 11.10% of the company, Rhonda Passafiume-Moss is a shareholder and owner of 11.10% of the company and Teresa Passafiume is a shareholder and owner of 11.10% of the company. DN 12-4 at 1.

Such information, taken as true, plausibly indicates that the Individual Defendants were officers in a position to control such assets, owed a duty to preserve the PACA assets, and did not comply with those duties. Further, such pleading is not threadbare or conclusory. *See e.g. Weis-Buy Farms, Inc. v. Quality Sales LLC*, 3:11CV2011, 2012 WL 2237166 at *3 (D. Conn. June 15, 2012) ("The amended complaint . . . did plainly allege that [the individual defendant] was in control of the operations of [the company] and that he had the right and authority to control the operations. These are not conclusions of law. They are factual statements that the Court must accept as true at this juncture."); *Partner's Produce, Inc. v. Newport Int'l of Tierra Verde, Inc.*, No. 09–82404–CIV–MARRA, 2010 WL 2950005, at *3 (S.D. Fla. July 26, 2010) ("[G]iven that the Complaint alleges that the officers and directors were in a position to control [the corporation] 'at all relevant times,' the Complaint has satisfied the required pleading standard. . . . To the extent that Defendants claim that [the movant] was not in a position of control of [the corporation's] finances at all relevant times, such an inquiry is fact-specific and cannot be resolved on a motion to dismiss."); *Royal Mktg., LLC v. Paxson* (*In re Paxson*), 13-10817, 2013 WL 2180144, at *4 (Bankr. E.D. Pa. May 17, 2013) (finding that plaintiff's allegations were sufficient to state a claim for breach of fiduciary duty under PACA where "plaintiff [had] alleged that the debtor/defendant was an officer, director and/or owner of the PACA purchaser, . . . was in a position to control the disposition of PACA trust assets when the PACA invoices went unpaid, is listed as one of two principals of the corporate PACA license, and . . . operated [the purchaser corporation] during the relevant time period.").

## IV. Conclusion

Antle and Castellini have plausibly pled that Defendants were subject to PACA and failed to maintain a PACA trust. Therefore, this Court has jurisdiction to entertain the plausible amended complaint and Defendants' motion to dismiss (DN 14) is **DENIED**. Given this holding, the Defendants' original motion to dismiss (DN 11), which was filed prior to the amendment of the complaint, is also **DENIED** as moot.

**IT IS SO ORDERED.**

November 8, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**